The next case on our call this morning is Agenda No. 19, Case No. 105582, Exelon Corp. v. Illinois Department of Revenue, et al. Hold on one minute, Councilman. We don't want the train going by while you're trying to argue. It was going by the hotel several times last night. You get that with the room. No extra charge. Council, you may proceed. May it please the Court, I am Barry Levenstam. I appear here this morning on behalf of Exelon, which comes before this Court, asking it to reverse the Department's improperly narrow reading of Section 201E of the Investment Tax Credit Act and to order that Exelon be granted the one-half percent investment tax credit for the sums it invested in qualified property in this state in 1995 and 1996. Alternatively, later in the argument, I will be addressing our claim that we are entitled to the credit because the Department's denial of the credit to Exelon while granting the same credit to gas utilities and to a combined gas and electric utility on property used in its electric business violates the uniformity clause of our state's 1970 Constitution, Article 9, Section 2. Now, this Court has reversed interpretations of the Department of exemptions and credits and deductions multiple times in the past, including in the two cases that the Department chose to cite in support of its claim for deference here, the Vans Material case and the Street Evil Corporation case. Vans Material case we believe to be particularly of interest. In Vans, this Court reversed summary judgment for the Department and ordered judgment be entered for the taxpayer on an exemption because the Department had misinterpreted the statutory term of manufacturing, defining it too narrowly. Also of significance, the 1st District in American Stores reversed the Department and held the taxpayer entitled to this very investment tax credit because the Department misinterpreted the term retailing, again, interpreting it too narrowly. In American Stores, the 1st District reviewed the Investment Tax Credits Act's legislative history and concluded that the General Assembly intended a broad reading of the term retailing and indeed had, during the course of the legislative process, lowered the amount of the credit from 1% to 1.5% so that it could broaden the reach of the credit. Now, the Department justified its narrow reading of the term retailing based on a misreading of the Farron Cole decision. And I think that it is of particular note that the Appellate Court and the Department both ignore this Court's paradigmatic analysis set forth in Vans Material, separating this analysis into two steps because when you do that, I think the outcome becomes very clear. Step number one is to define the terms of the statute. And in Farron Cole, this Court addressed the meaning of the term tangible personal property in the context of the Retailer's Occupation Tax Act, and it defined that term to mean a property which is capable of being touched or perceptible to the touch. I emphasize that we accept this holding. We agree with this holding, and indeed we rely on this holding. The second tier of Farron Cole, however, is, and the second tier under Vans Material's paradigm is to apply a statute to the record before the Court. Now, Exelon cannot be bound by Farron Cole's tier two analysis because it was not present. It had no privity to the parties, and it had no opportunity to make a record in that case. And indeed, the record in that case pertained really to the question of coal and the taxability of a sale of coal, not electricity. In our second tier analysis, what should have happened here is that the courts below should have looked at the report that we submitted from Dr. Joel Fagans, a noted physicist, which stated essentially that electricity is indeed tangible. It can be sensed, felt, tasted, seen, heard, measured, and stored, and it's subject to the universal laws of nature. It is therefore tangible, as this Court has defined the legal term tangible. Coincidentally, on the date that this Court granted our PLA in this case, it denied a PLA in a case entitled Jones v. Commonwealth Edison, in which the plaintiff had been working on a scaffold and at the time made contact with a power line, and the electricity physically knocked him off the scaffold to the ground where he was injured. He lost below, and this Court didn't deem it essential to bring that case up here because he lost because it is open and obvious under the law of Illinois that electrical power lines are dangerous because electricity is tangible. It can't physically touch you and hurt you. So, Counselor, it's your argument that on the first prong of the test that it's a question then of law. Yes, the definition of the statute of tangible, and as I say we embrace this Court's definition from Farron Cole of tangibility. So the confusion, I believe, arises from the fact that the Cole Company devised this clever argument, and its argument was we're not really selling coal, not these clumps of material which obviously are tangible. We are selling the heat energy that is locked in coal that needs only the flame to set it free. And what the utility is doing is not consuming our coal, but transforming our heat energy into electrical energy for resale. And if you go back to the archives and you look at the appendix to the briefs in this case, you will see that for two days physicists argued about what this heat energy is primarily and whether it exists separate from the coal and so on and so forth. And ultimately, the Court said, uh-uh, this is not going to work. It said what has happened here is they have sold coal as fuel and the utility has burned that coal. All that is left is ash and it is, quote, direct quote, it is difficult to perceive how there could be a more complete use or consumption of the coal within the meaning of the act. So the focus of this decision is really on the coal. Now, as the department pointed out, 12 years after Ferrin Coal, the legislature did speak to the issue of the tangibility of electricity in Public Act 76-964. And in that act, it incorporated sections of the ROTA, the Retailer's Occupation Tax Act. But it said that sales of tangible personal property mean distributing, supplying, furnishing, or selling electricity. It is an explicit recognition that electricity is tangible. Now, the reason why it went to the lengths to describe this is because back in the 30s in the Ames case, the Supreme Court held that the utilities generally, electricity and gas, and phone and water, were not subject to the ROTA because they were not really retailing, they were selling services. And so when it came in 1969 to incorporate this provision into the Utilities Act so that it could tax electricity and gas, it made clear that services are not, this is in fact tangible. And it had an identical section in Public Act 76-965 for gas. It needed to treat the two identically, as the legislature does and as this court generally has done in the past. So, and furthermore, 201E goes a step further and it specifically includes services in the definition of retailing. And we submit that that makes perfectly clear that utilities are incorporated within 201E. Now, in terms of my alternative argument, we believe that the uniformity clause requires the department to treat Exelon as it has admittedly treated gas utilities and the combined gas and electric utility that it allowed to have this credit with respect to investment in its electric generating facilities. We believe that the appellate court erred in this case in basically refusing to follow an unbroken string of 30 years of cases from this court applying uniformity analysis to classifications created for exemptions, which no court has cited since 1979 ever. And I believe that if you compare the Searle Pharmaceuticals case, for example, which is one of the cases in which this court analyzed whether a particular deduction was violative of the uniformity clause and conducted a uniformity analysis as well as a reasonableness analysis. If you compare Searle with Head, you will find a much more searching examination of the provision of the Constitution, of the legislative history of the Constitution, and of what it means to interpret this. Now, with due respect to the court's head decision, that court did not address the drafter's debate where Delegate Garrison, who was leading the charge for the adoption of the uniformity clause, said specifically, we do, to a question, would the exemptions, et cetera, have to be applied uniformly? And he said, absolutely. Initially, indeed, he said, I believe. And then he said, let me take the words I believe out. That is the intent of the committee. Counsel, did any of the cases that you cite subsequent to Head purport to interpret the credits and exemptions language of the uniformity clause? Well, all of them had credits, exemptions, or deductions to address. And they addressed the uniformity clause as a whole. And they simply said that these provisions need to be assessed for uniformity. And although you don't like Head, it did clearly state that credits need only be reasonable, right? I mean, that is in the context. Well, all right. Yes. The second sentence only says reasonable. But if you apply this provision textually, it says, in any law classifying the subjects or objects of non-property taxes or fees, the classes shall be reasonable. And the subjects and objects within each class shall be taxed uniformly. Now, any law includes Section 201E. It is a law that classifies the subjects of non-property taxes. It classifies them into retailers, manufacturers, miners. And so, per force, it is subject in the first instance to the first sentence. And that, I think, is essentially what has been going on for 30 years when this Court has analyzed deductions, exemptions, and credits on the basis of whether they classify uniformly or not. And, again, as I say, Delegate Garrison was specifically asked this question. And if you look at the discussions at the time of the Constitutional Convention on the floor and in the report, what you learn is that there was great concern about whether, if the first sentence stood alone, the legislature would still retain the authority to grant exemptions for food and other necessities, clothing. There was some concern. There was a little bit of discussion about how they might want to do that. At one point, there was discussion about whether they wanted to mention food specifically in the second sentence. And the conclusion was, no, we don't want to exclude anything. We don't want to start listing in the Constitution what you can address in exemptions. We will allow you to make exemptions. But as Delegate Garrison said in response to a specific question on this very point from Delegate Davis, is there an intention to apply uniformity only in the first sentence and not to these exemptions? Delegate Garrison answered specifically, no, that is not our intention. Our intention is that uniformity must apply to exemptions. If we were to grant an exemption for food, it would have to apply to all food providers. And that's right in the transcript. I believe it's page 1861 of the third volume of the Constitutional Convention. So review of the text, if you look at the words, any law classifying subjects, our law 201E is a law classifying the subjects of non-property taxes, and it fits under that first sentence as well. If you look at the legislative history, you again come to the conclusion that they did not intend to single out exemptions for separate treatment. They just wanted to make clear in a second sentence that the legislature retained the authority to grant exemptions, deductions, and credits. So the Searle test says there must be a real and substantial difference between those taxed and those not taxed. This court has held since the 1930s, and I'm quoting People's Gas v. Ames, that there is a, quote, class of corporations ordinarily known and referred to as public utilities. Such corporations form a particular class by themselves. There is no evidence anywhere that the legislature, when it drafted this tax credit under 201E, intended to draw a line between gas utilities and electric utilities. There's no evidence anywhere in the record of the legislative history. There is no suggestion anywhere that gas utilities investments in this state produce more or better jobs than electric utilities investments in this state. There is no indication anywhere in the record that because these utilities tend to pass these savings through to their consumers, that consumers who heat their homes or cook their meals with gas should get a lower rate as a result of the investment in this state through the investment tax credit than their neighbors who are heating their homes or cooking their food with electricity. Nothing in the record whatsoever. So in the first instance, based on over 70 years of history in this state of utilities being classed as a unique and particular class in and of themselves, we submit that there is no real and substantial difference between the electric utilities and the gas utilities. And in the second particular, we submit that this classification or division between the two, it certainly bears no reasonable relationship to the purpose of the Investment Tax Credit Act, which was to generate investment in the state of Illinois in the hope that that would create more jobs. And indeed, in 1995 and 1996, we made a very substantial investment in property located in the state of Illinois. And there is no indication anywhere that the gas companies doing the same should get this benefit and that we should not. Now, I would like to pause briefly to address a couple of cases that are cited against me and distinguish them for your honors. People's Gas versus the City of Chicago is not to the contrary in our case. First of all, it addressed statutes that are identical as to gas and electricity, which the legislature said to municipalities, you can tax these up to 5%. Second of all, People's Gas versus Chicago involved tax ordinances that the City of Chicago enacted to equalize the tax burden on electric gas and other utilities. And what had happened as a sort of historical anomaly was that gas had, since about the era of the Civil War, had a free pass on street taxes to the City of Chicago, whereas the electric companies at this point were paying about 4%. So after the enactment of the statute that enabled the city to do so, it decided to take both utilities up to 5%. The way it had to do that was to lay a 5% tax on gas and a 1% tax on the electricity. But the underlying statutes from the legislature treated both the same, and the result of the municipal enactments also treated both the same. I would also point out that People's Gas' decision in 1956 preceded the 1970 Constitution with its added protection under the Uniformity Clause by some 14 years, and it also preceded the Public Acts 76, 964, and 965, in which the General Assembly demonstrably treated electricity and gas identically. And finally, to the extent that it minimizes the significance that there is some competition on each side of the utilities here, because part of the argument there was we're in competition in certain respects in certain markets, you have this Court's decision after 1970 in the Commercial National Bank case, in which it concluded that it was unconstitutional to draw a line for classification purposes between, and again, this is for an exemption, between securities. Your time is up. I do have a question. Sure. On the standard of review. I don't think there's any dispute that in administrative review cases we will review de novo as to how to define statutory terms like tangible. The question I have is whether that same standard, de novo, would apply to the ultimate determination of whether electricity falls within one category or another. Would the clearly erroneous standard apply there since the facts are undisputed? In this case, because the facts are undisputed and the only evidence in the record is our evidence, it is essentially a de novo. It's a matter of law. There is no question of fact below that you would defer to the Department or a lower court. So, yes. And we would request, if you have a further question, I'm happy to answer it. Otherwise, I just want to specify. In order for you to prevail, would we have to overrule fraud? No, I don't think you would have to at all. I don't think so. So my request for relief is that you do hear what you did in Vann's material, reverse the summary judgment entered for the Department of Revenue, and direct that judgment be entered for us because they erred as a matter of law in interpreting and erred again in implying this standard, this statutory standard. Thank you very much. Thank you, counsel. You may proceed. Would you start with the standard review? Excuse me. There are two questions for review. One is a statutory interpretation question. The other a constitutional question. Both questions are de novo. There is no factual question to review, then? There is no factual question to review. Electricity is a tangible object, is it? That, we believe, is a question of law, and, in fact, a question of law that's already been decided by this Court. If I might start, actually, with the uniformity clause, just to pick up where opposing counsel left off. And I think the threshold issue in that uniformity clause analysis is to identify the recipients of this credit at the proper level of specificity. Exelon has continued to complain about the credit on the basis that not all companies that are public utilities and provide energy receive it. But both the Circuit Court in review and the Appellate Court rejected that level of analysis. The Circuit Court said this credit, Section 201, the investment tax credit, does not discriminate against electric utilities. It draws a distinction between retailers and everyone else. And the Appellate Court said, in addressing the reasonableness of the statute, that the decision to limit the credit to manufacturers, retailers, and mining was reasonable. So both courts have rejected the idea that we're looking at a distinction between two different types of energy utilities, and they've looked at really what's the classification or who did the legislature determine the credit should apply to. And this makes perfect sense under uniformity clause analysis because this Court has said repeatedly, in fact, it's part of the legal standard for a uniformity clause challenge, is that perfect rationality as to every taxpayer is not required. The legislature need not prove that its exemptions or its taxes, for that matter, are going to apply with an absolute precision in fairness to every single taxpayer in the state of Illinois. And that's because that's an impossible standard. And what the Court instead has said is, well, let's look at the classifications that the legislature did draw and determine if they were reasonable. And that's the standard that was applied by the Appellate Court and by the Circuit Court. And by force of will alone, Exelon continues to insist on a much more narrower standard. But what they're really, they're not even looking at sellers of electricity and sellers of gas. They're going even to a more microcosmic level to say, we're a utility that principally sells energy, and they're a utility that principally sells energy. But that's a level of analysis in the uniformity clause approach that's just, I would say, unprecedented. And if you look at Gafis Cafe, Arangold, these are both cases where the Court has said, look, we're not going to go into the minutia. We're not going to charge the legislature with knowledge of how every single industry in the state operates and how its classifications will play out to that level. What we're going to do is look at the classifications and see if they're reasonable. Now, when we look at this classification between retailers on the one hand and other taxpayers on the other, the kind of difficult uniformity clause question, or maybe the most interesting uniformity clause question, which is whether or not exemptions need only be reasonable or need to be uniform and reasonable, it kind of becomes moot because nobody would claim or argue that there is not a real and substantial difference between retailers on the one hand and non-retailers on the other. In fact, that distinction is the basis of many of our basic tax acts, the Retailers' Occupation Tax Act, the Service Occupation Tax Act. Manufacturers are taxed differently. So the uniformity question, once we look at the proper classification, it sort of dissipates. It disappears. But nevertheless, the Court below, the Appellate Court, did look at the language of the uniformity clause and it did see that this was an exemption and there's no dispute that we are talking about an exemption here. And it applied the plain language of the uniformity clause. And the plain language really isn't in dispute. The interpretation that opposing counsel has proffered where any law classifying taxes and fees would include laws classifying exemptions would render the second sentence of the uniformity clause a nullity. There would be no reason for it at all. And it's very clear that the first sentence uses different terms than the second sentence. Taxes and fees must be reasonable and uniform. Exemptions must only be reasonable. The basic principles of constitutional interpretation would dictate that those two sentences have different meanings. And that's what this Court expressly said and had it be Corsak, which is the only case this Court has ruled in, in which it has actually discussed the differing language in the 1970 Constitution Uniformity Clause. So it's your argument that we shouldn't be looking at or thinking about what the situation is to guess. We should just be looking at whether there's a retailer or a non-retailer. Is that right? That's correct. I would say that the Court should look to the classifications that the legislature drew here between retailers, mining, and manufacturing on the one hand and other taxpayers on the other and look to see if those distinctions were reasonable. And to keep in mind that in a Uniformity Clause analysis, perfect rationality as to every taxpayer is not required because it is impossible. Because it will open the floodgates. There will always be a taxpayer who says, wait, I'm very, very closely situated with this other taxpayer, and yet I'm taxed differently. And those are not cognizable claims under the Uniformity Clause, and that's what this claim really is. It's a very specific claim by a very specific type of taxpayer, rather than a look at the legislative classification as a whole. But even so, and even assuming that we were discussing that the relevant classification were electricity and gas, there is a case from this Court, a 1956 case, People's Gas v. Chicago, where the Court expressly said it is okay for the legislature, there is a real and substantial difference between gas and electricity, which allows the legislature to tax those two commodities differently. And that case in many ways was identical to this claim in the sense that I think it was a gas company complained that an electric utility, ComEd, was getting a better deal than it, and that they were competitors and that they provided energy in a competitive business. In the same way, and what the Court said is, well, you may have overlap, there may be overlap, there may be some competition between you, but the history of your products, the history of the markets, the way they're developed, and where they might be going are so different that we're going to let the legislature keep their eye on the evolution of the gas and electric market, rather than draw a hard constitutional line and prevent them from distinguishing between the two. So, I mean, I'm at a couple of levels of abstraction, I know, because really my principal point is that the legislature did not draw a distinction that they're complaining about, and that this Court should be looking at the distinction they did draw between retailers and non-retailers. But then even if the Court did look down at that level of specificity and said, well, can the legislature, is it permissible for the legislature to tax electricity and gas differently? People's Gas Light v. Chicago does dispose of that issue. It says it is permissible. It would not always be the best policy, but it is permissible because there is a real and substantial difference between the two. Counsel, what is that real and substantial difference? Well, what the Court relied on was the history, the different markets that the two products have been in and where they're going. So it said, look, you may be competitors now, right? There might be less of a difference right now because you do the same thing, but 20 years ago there was a big difference. Gas was used to light street lamps, which is no longer the case, and really 20 years from now it might be different. My very quick thumbnail research discovered that 3% of cars run on natural gas right now, and there are natural gas buses in major cities throughout the United States. So the markets are different, and they're evolving, and they're changing, and they're different products, that they come from different places. And so it doesn't make sense to say, as a constitutional matter, you can't treat them differently because they have a lot of different attributes to them. Now, in this case, if I could turn at this point, I think, to the statutory argument, which I think begins. Do you agree, though, that the uniformity argument is an alternative to the statutory one? That is correct. I mean, if the court concludes that the Department misinterpreted the statute, then there would be no uniformity analysis. Or another way to put it is the state has to win on both. To encapsulate your argument on the point you're going to, do you think Farron decides this case? I do think Farron decides this case, yes. In Farron, the argument that was made was that the argument wasn't, as Excellen seems to be suggesting, that coal was intangible. Nobody made that argument. Coal was indisputably tangible. What Farron Coal was arguing was that it wasn't sold at retail. What it was instead done is it was sold to an intermediary, who then converted it into another form of tangible personal property, which is electricity, and sold that at retail. So they shouldn't have to pay the retailer's tax, even though their coal was tangible, because it wasn't being sold at retail. At first, it had to be converted before a retail sale was made. So the question that was squarely presented to the court was, well, is that final sale of electricity by that utility, is that a sale of tangible personal property? And they said it was not. That electricity was not tangible personal property. And that case has been cited by the appellate courts. It's been cited by this court for that proposition. Counsel, isn't the answer to that question a scientific one? Well, aren't there questions like that to which the answer is a scientific one? In different forums, the question could be answered differently. I would say that physicists may be able to debate over whether or not, as a physical matter. Was there any evidence in this case that it was not tangible? There was no evidence presented by the department. In fact, when Excellent filed their cross-motion for summary judgment and included the affidavit, what the department did is rather than respond is they requested more time to get an opposing expert in the event that their motion for summary judgment wasn't granted. So what happened was the department's motion was granted, and so that request became moved. So I think that's where the record stands right now, is that they presented an affidavit and we did not. As a principle, if we held today that some physical fact was thus, 20 years from now, in citing that case, there was evidence in the record that said that we were just flat wrong in our scientific answer that we gave to the question. Would we be bound by it by stare decisis? You would not be. I mean, stare decisis would apply, but, of course, if something is clearly and obviously wrong, then there would be a reason to overrule it. But they haven't presented any evidence that the properties of electricity have changed since ferricol or that they're different. Of course, electricity hasn't changed. So it was the same evidence. Is it possible, and you disagree that this is true, but is it possible that the definition given under the ferricol case was simply wrong? Is it possible that the definition given is simply wrong as what, as a scientific matter? Right, whether or not it was a piece of tangible. I don't know whether, as a scientific matter, electricity would qualify as tangible. It would depend, of course, on the definition of tangible and what was meant by that, but I don't know the answer to that question. Was it necessary in Foran for the court to determine whether electricity was tangible or intangible? Was it the real issue whether the sale of coal was the sale of tangible property? That was not the real issue because the parties agreed that the sale of coal was the sale of tangible property. What they argued was that it was the sale of tangible property not for retail, for resale at a later date. So was it necessary, even with that correction, for the court to determine or to define whether electricity was tangible? Well, it was certainly presented by the plaintiff, and it was decided by the court, and it was argued by counsel. And whether it's absolutely critical to the holding, I think, is a very fine question. I think it was critical to the holding. I think they did have to determine that that ultimate product that the coal was converted into was not tangible personal property in order to find that the coal was, in fact, sold for retail. So I think it was critical. But even allowing the possibility that it was just to the left of critical, it was a point that was squarely presented and squarely decided by the court. So it does remain binding precedent. Would to the left of critical be judicial dicta? I believe that's the term, judicial dicta, which is something that's presented to the court, argued by the parties, decided by the court, yes. And unnecessary to the decision. But not critical to the decision, as you pointed out, yes. And as importantly as what Farron Cole decided is how Farron Cole, I think, has been interpreted. I think there has been a lot of reliance on that decision in the appellate courts, at the department, in the legislature, so that when they go to define, say, electricity for purposes of the Public Utilities Act, they know the background that they're working against. And opposing counsel pointed out the 1969 amendment in which the legislature said that the selling of tangible personal property means electricity. What he didn't point out is it said, in this act, for purposes of this act only, it means electricity. And I think that gives that amendment a significantly different reading as to what the legislature was thinking when they passed it, when they said, for the purposes of this act, the Public Utilities Act, we're going to incorporate these things, and when we refer to tangible personal property, you'll know we're referring to electricity. But that doesn't mean, in fact, I think it means the opposite. It means that when they knew how to legislate around the rule that had been established in Farron when they wanted to, and they did that when they needed to. And to now, 50 years later, when this is clearly, you know, an issue that could easily be resolved by the legislature. If they want to include electricity in a tax exemption or a tax credit, if they want to include it as tangible personal property, the court did not set forth a constitutional rule in Farron. And yet, for 50 years, the legislature has worked based on that rule, and there has been reliance. The appellate courts have affirmed cases and decided cases based on that rule. And that is the accepted rule that, you know, that we've been working under. And with that kind of reliance, and given that it was not clearly wrong as to the decision, in fact, most of the more recent decisions on the same issue from other Supreme Courts of other states have actually agreed with the Farron-Cole decision, and some of them have even relied on it. I think the most recent is the Kansas Supreme Court, which has reached the same conclusion, that in using the phrase tangible personal property, the Kansas legislature did not mean to include electricity because it's not in the normal and general and widely accepted definition of that term. Opposing counsel mentioned in his introduction the case of Vann's materials, which he cited for the proposition that there's a very formulaic approach that has to be taken to these statutory interpretations questions, where first you interpret the statute and then you look at the facts to apply it. The ironic thing is that in Vann's there was a question about whether ready-mix concrete was tangible personal property. That question actually did arise in that very case, Vann's material. And what the court did is, in that case, the department took the position that ready-mix concrete was actually real estate. And the court said, you know, we're not even going to define tangible personal property. We're just going to note that we have previously affirmed decisions in which we found that ready-mix concrete was tangible personal property. And it's cited to an earlier case, material services. And that's no different than what we're doing right now, right, is we're saying, look, this question has been presented to this court before. The same facts have been presented, the same issue. In this case, electricity. In that case, ready-mix concrete. We're not going to go through another trial. We're just going to assume, or we're going to take for granted, that what we decided 50 years ago has now been incorporated into that statute and is now part of the definition of that term and is understood. And the legislature is assumed to understand that now. One of the other points that opposing counsel made was this idea that the tax credit expands on the definition of retailer to include service businesses, too. And that is really, I think, a red herring. It was really raised for the first time in the reply brief. I mean, if you look at the statement of the case and the statement of issues, it's really all about is electricity tangible personal property. And at the end here, we tried to slide in as a service business. We'd still be eligible for the credit. But that argument really fails for two reasons. And the first reason is that even a service business must provide the service in conjunction with the sale of tangible property. That's right there in the definition. So we really, it just doubles us back to the question of whether or not this court has decided that electricity is tangible or not. And the second reason is that that phrase, service in conjunction with tangible personal property and the investment tax credit, is the subject of a department rule. And that rule has not been challenged. And under that rule, a service business, a service in order to get the investment tax credit,  So not any service in which property is involved, tangible personal, would be entitled to the credit. An example would be somebody who provides financing for the purchase of home consumer goods like stoves or refrigerators. You provide financing in conjunction with the property. That person is not entitled to an investment tax credit for retailers. He's a service business. And under the department's regulation, because the service predominates over the sale, he's not a retailer and isn't entitled to the credit. The regulation is 86 Illinois Administrative Code, section 100.2101. I'm sorry I wasn't cited earlier, but this issue of whether or not a service is entitled was really raised in the reply brief. So I brought it to your attention here. And I would be happy to file a supplemental brief to which opposing counsel could reply if you think that would be helpful. Thank you for your patience. And I think if there are no further questions, I think I've covered everything I intended to. And we ask that the judgment of the appellate court be affirmed. Thank you, counsel. Mr. Levenstam, I'd like to ask you a question that was brought up late in Mr. Burke's argument. When the legislature used the phrase in the statute at issue, it was aware of the construction that the court had placed on it in another context, right? Well, yes. That's a presumption. But, again, first of all, fair and cold did not hold as a matter of necessity that electricity is tangible. Second of all, 12 years after fair and cold, the legislature, specifically in the context of 76-964, defined electricity, defined tangible personal property to include electricity. And while he says they defined it so in the act, what you have to keep in mind is what they were doing was incorporating provisions from the Retailer's Occupation Tax Act. And they wanted to be sure that when they taxed these utilities, again, gas and electric identically, under the Utilities Act, which they had now incorporated ROTA into, they didn't, by terms of this definition, cause a double tax by making the definition of ROTA cover the utilities as well, so they limited it to this act. But they did not say, which they could have, under the Utilities Act, we will treat electricity and gas as though it were being sold at retail, as though it were a tangible personal property. They said it means that it is. And the legislature is not redefining reality or physics. It is addressing what is unquestionably the case, which is, under this court's definition, the legal standard of tangibility, it is can you touch it. And absolutely you can touch it. If you've ever touched the prongs and you're pulling out a plug in a lamp, you know you can touch electricity. So I don't think that 201E is enacted with the specific notion that electricity is not tangible. Keep in mind, all along, these utilities have been treated the same. Even in the cases when they talk about whether electricity is intangible or not, in Menegas, that old larceny case, where they didn't hold that it was intangible, the state just said offhand, it doesn't matter, it could be intangible, it doesn't matter because all property is subject to the larceny statute. The end result was they compared electricity to gas, said they're the same, and because you can be convicted of larceny for stealing gas, you can be convicted of larceny for stealing electricity. This court and the legislature have always treated them the same. And again, going back to that people's gas case, if you look at what the case says, you will find that the legislature's statutes were identical as to gas and as to electricity, and that the effect of the municipal ordinances was to impose identical municipal taxes on the two. So is there, am I saying that there will never be a case in which they can be treated separately? No, I'm not. If somebody were to make a record that demonstrated that there was a legitimate economic reason for the legislature to distinguish, then the legislature could and the uniformity clause would allow that. The Geha's case is a very instructive case in that respect because, as this court took pains to point out, the Department of Revenue obtained and submitted complicated studies by Coopers and Librand and Pete Marwick justifying the distinctions, the classifications they drew for that Metropolitan Peer Authority tax. There is no legislative distinction and they have submitted no evidence either that electricity is intangible or that there is a justification for treating the two differently for the purposes of this statute. Nothing. And I would say, again, with respect to Ferron Coal, the focus of that decision was on coal. And, as I said, the coal company came up with this spiffy little argument, which was, we're not selling coal, we're selling the energy that's locked away in coal. They're not consuming our coal, they're transforming it. And if you look in the appendix to the briefs, they actually are talking about whether the electrons from the coal end up in the flow of electrons that are the electricity in it. They don't. And so the conclusion, because the ultimate test for taxability there is whether the coal was an ingredient or constituent that goes into and forms a part of the electricity. And it was not. And for that reason, this court held, after all is said and done, that the coal was sold for consumption and not for resale. If you look at these subsequent cases that he's talking about, like the Union Coal case, that is a case that fits specifically and perfectly into my discussion. The question was, fuel oil occupied the status of the coal in the Ferron Coal case, and asphalt the status of electricity. In other words, they bought fuel oil, they burned it to make the asphalt, and they were saying that fuel oil was reused as part of the asphalt. And the court said, Justice Stouder said, no, that fuel oil was consumed like the coal in Ferron Coal. Now, the asphalt that was the end result, there's no question that asphalt is tangible, right? So what Union Coal shows is that the ultimate product, the question whether that's tangible or not, is irrelevant to the decision of whether you tax the fuel that's used to manufacture it. That decision turns on whether that fuel was a constituent part or ingredient that was incorporated into the end product. If it was, it was for resale. If it was not, it was for use or consumption. In Ferron Coal, it was for use or consumption. Now, I just want to say briefly on the constitutional issue, if you'll indulge me one brief pun, the point is shocking that he says we cannot go behind the legislature's distinction and attack on the constitutional grounds how the Department of Revenue is applying that statute. Of course we can. That's exactly what happened in Vans. That's exactly what happened in Streeterville. And they lost both of those cases. If they are applying a legislative distinction in a manner that discriminates, that draws classifications that are not between real and substantially different companies, that are not related to the cause of the statute, then their distinctions are subject to being struck down. And that is specifically what we are asking to do. We are not asking to challenge the statute. The General Assembly, as I said before, never drew a distinction between gas and electricity. And the department did not point anything in the legislative history to suggest a response that they did, that there is any legitimate difference between the jobs generated by electric investments and by gas investments, that there is any reason why gas customers should get the benefit of a tax credit that electric customers do not. And so I don't think you need to get your honors to the constitutional question, because even if Farron Cole said squarely that electricity is not tangible, it was on a different record, a record that was really focused on coal, we weren't there, we're not bound. We have provided a record of physicists' report that is undisputed and that is accurate according to the matters of science. And I think this Court, it's incumbent upon this Court to decide this case based upon the record before it that was made below. And when you do that, I believe, without even having to overrule Farron Cole, you will come to the conclusion that we are entitled to the investment tax credit. And even if you don't then, for the constitutional reasons, we should get the same tax credit that the gas company and the combined gas and electric company. And I didn't hear any response to that today received on the assets it used, it invested in to generate electricity. Thank you very much, Your Honor. Thank you both, counsel. Agenda number 19, case number 105.